UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
BARBARA G. BROWN, as President and on
behalf of the CITYWIDE ASSOCIATION OF
LAW ASSISTANTS, ARTHUR CHELIOTES,
as President and on behalf of LOCAL 1180,
COMMUNICATIONS WORKERS OF
AMERICA, AFL-CIO, JOHN CLANCY, as
President and on behalf of the COURT
OFFICERS BENEVELONT ASSOCIATION
OF NASSAU COUNTY, CLIFFORD
KOPPELMAN, as President and on behalf of
LOCAL 1070, DISTRICT COUNCIL 37,
AFSCME, AFL-CIO, BRENDA LEVINSON, as
President and on behalf of the COURT
ATTORNEYS ASSOCIATION OF THE CITY
OF NEW YORK, CHRISTOPHER MANNING,
as President and on behalf of the SUFFOLK
COUNTY COURT EMPLOYEES
ASSOCIATION, INC., JOHN STRANDBERG,
As President and on behalf of the NEW YORK
STATE SUPREME COURT OFFICERS
ASSOCIATION, JOSEPH C. WALSH, as
President and on behalf of the NEW YORK
STATE COURT CLERKS ASSOCIATIONS

MEMORANDUM OF
DECISION AND ORDER
12-CV-0930 (ADS)(ARL)

        Plaintiffs,

    -against-

STATE OF NEW YORK, ANDREW M.
CUOMO, individually and in his official
capacity as Governor of the State of New York,
NEW YORK UNIFIED COURT SYSTEM,
JONATHAN LIPPMAN, individually and in his
capacity as the Chief Judge of the State of New
York, A. GAIL PRUDENTI, individually and in
her capacity as the Chief Administrative Judge
of the Court of New York State, NEW YORK
STATE CIVIL SERVICE DEPARTMENT,
PATRICIA A. HITE, individually, and in her
official capacity as Commissioner of the New
York State Civil Service Department, NEW
YORK STATE CIVIL SERVICE
COMMISSION, CAROLINE W. AHL and J.

DENNIS HANRAHAN, individually and in
their official capacities as Commissioners of the
New York State Civil Service Commission,
ROBERT L. MEGNA, individually and in his
official capacity as Director of the New York
State Division of the Budget, THOMAS P.
DINAPOLI, individually, and in his official
capacity as Comptroller of the State of New
York, and NEW YORK STATE AND LOCAL
RETIREMENT SYSTEM,

       Defendants.
-----------------------------------------------------------X

APPEARANCES:

Greenberg Burzichelli Greenberg P.C.
*Attorneys for the Plaintiffs*
3000 Marcus Avenue, Suite 1W7
Lake Success, NY 11042
 By: Harry Greenberg, Esq.
   Linda N. Keller, Esq.
   Seth H. Greenberg, Esq., Of Counsel

Eric T. Schneiderman, Attorney General of the State of New York
*Attorneys for the Defendants*
200 Old County Road, Suite 240
Mineola, NY 11501
  By: Ralph Pernick, Assistant Attorney General

SPATT, District Judge.

  The Plaintiffs commenced the within action alleging that the Defendants unilaterally increased the percentage of contributions that employees represented by the Plaintiffs, New York State public-employee unions, were required to pay for health insurance benefits and thereby violated the Contracts Clause and Due Process Clause of the United States Constitution and impaired the Plaintiffs' contractual rights under the terms of their Collective Bargaining Agreements. The Plaintiffs seek injunctive relief, declaratory judgments, and monetary damages. Presently before the Court is the Defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) for lack of subject matter

jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted, or, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404 to the United States District Court for the Northern District of New York. For the reasons set forth below, the motion to transfer venue is granted.

## I.   BACKGROUND

### A. <u>Factual Background and Procedural History</u>

Unless stated otherwise, the following facts are drawn from the complaint and construed in a light favorable to the Plaintiffs.

The Plaintiff Citywide Association of Law Assistants ("the CALA") is the collective bargaining representative of certain non-judicial court attorney employees in the Civil, Criminal, and Family Courts of New York City employed by the New York State Unified Court System ("UCS"). The Plaintiff Barbara G. Brown is the Chairperson of the CALA.

The Plaintiff Local 1180, Communication Workers of America AFL-CIO ("CWA") is the collective bargaining representative of certain non-judicial employees holding the titles Assistant Court Analyst, Administrative Services Clerk, Court Analyst, Senior and Principal Administrative Services Clerk, and Supervising Photostate Operator, all employed by the UCS. The Plaintiff Arthur Cheliotes is the duly elected President of CWA.

The Plaintiff Court Officers Benevolent Association of Nassau County ("COBANC") is the collective bargaining representative of certain non-judicial court employees in Nassau County employed by the UCS. The Plaintiff John Clancy is the President of COBANC.

The Plaintiff Local 1070, District Council 37, AFSCME, AFL–CIO ("Local 170") is the collective bargaining representative of certain non-judicial employees employed by the UCS. The Plaintiff Clifford Koppelman is the duly elected President of Local 1070.

3

The Plaintiff Court Attorneys Association of the City of New York ("CAA") is the collective bargaining representative of certain non-judicial court attorney employees in New York City employed by the UCS. The Plaintiff Brenda Levinson is the duly elected President of CAA.

The Plaintiff Suffolk County Court Employees Association, Inc. ("SC CEA") is the collective bargaining representative of certain non-judicial employees in Suffolk County employed by the UCS. The Plaintiff Christopher Manning is the duly elected President of SC CEA.

The Plaintiff New York State Supreme Court Officers Association ("SCOA") is the collective bargaining representative of certain Supreme Court officers employed by the UCS. The Plaintiff John Strandberg is the duly elected President of the SCOA.

The Plaintiff New York State Court Clerks Association ("CCA") is the collective bargaining representative of certain non-judicial court clerks employed by the UCS. The Plaintiff Joseph C. Walsh is the duly elected President of CCA.

The employees represented by the Plaintiffs receive their health benefits through the UCS.

During the relevant time, the defendant Patricia A. Hite ("Hite") was Acting Commissioner of the Civil Service Department. The Defendants Caroline W. Ahl ("Ahl") and J. Dennis Hanrahan were members of the Civil Service Commission. The Defendant Robert L. Megna ("Megna") was the Director of the New York State Division of Budget. The Defendant Thomas P. DiNapoli ("DiNapoli") was the Comptroller of the State of New York.

Article XI of the New York State Civil Service Law ("CSL") provides for a statewide health insurance plan for eligible State employees and retired State employees known as

NYSHIP or "Empire Plan." New York Civil Service Law § 167(1) assigns the State contribution rate towards the cost of health insurance premium or subscription charges for the coverage of State employees and retired State employees enrolled in NYSHIP. Prior to 1983, the State was required to pay the full cost of premium or subscription charges for the coverage of State employees and retired State employees enrolled in NYSHIP. Chapter 14 of the Laws of 1983 amended Civil Service Law § 167(1)(a) to limit the amount that the State was required to pay towards the cost of premium or subscription charges for the coverage of State employees and retired State employees enrolled in NYSHIP. This law provided that the State was required to contribute only ninety percent (90%) of the cost of such premium or subscription charges for the coverage of State employees and retired State employees retiring on or after January 1, 1983. The State would continue to contribute seventy-five percent (75%) of such charges for dependent coverage for State employees and retired State employees.

The Governor's Program Bill Memorandum regarding the 1983 amendment provided that "[t]he State and the employee organizations representing State workers have agreed to a reduction of the State's contribution for the premium or subscription charges for employees enrolled in the statewide health insurance plan."

The Division of the Budget's Report on Bills also acknowledged that "[t]his measure provides the necessary authorization to implement negotiated agreements between the State and the employee organizations representing State employees. This action is appropriate in view of the 'good faith' efforts of the State and the employee organizations to reach agreement on this critical issue."

Between 1983 and 2011, Civil Service Law § 167(8) provided:

[n]otwithstanding any inconsistent provision of law, where and to the extent that an agreement between the state and an employee organization entered into

pursuant to article fourteen of this chapter so provides, the state cost of premium or subscription charges for eligible employees covered by such agreement may be <u>increased</u> pursuant to the terms of such agreement.

(emphasis added). As a result of negotiations, the Plaintiffs and the State of New York executed Collective Bargaining Agreements ("CBAs") between 1983 and 2011 consistent with Civil Service Law § 167(1). The most recent CBAs covered the period beginning April 1, 2007 and expiring March 31, 2011. The Plaintiffs maintain that, in the absence of newly executed CBAs, the terms and conditions reflected in the parties' prior CBAs continue pursuant to Civil Service Law § 209-a.1(e) ("the <u>Triborough</u> doctrine").

Article 8.1 of the CBAs provide that "[e]mployees enrolled in such plans shall receive health and prescription drug benefits to the same extent, at the same contribution level, [and] in the same form and with the same co-payment structure that applies to the majority of represented Executive Branch employees [covered by such plans]." The agreement thus provided the Plaintiff Union members with two guarantees: first, they would continue to receive health and prescription drug benefits; and second, they would receive the same benefits on the same terms as the majority of represented Executive Branch employees. This section appears, either verbatim or in substantially identical form, in every CBA executed by the parties for more than twenty years.

On August 17, 2011, as part of an effort to reduce the state's budget deficit, the New York State Legislature passed Chapter 491 of the Laws of 2011. Chapter 491 amended § 167(8) and replaced the word "increased" with the word "modified." Specifically, the amendment provided as follows:

> [n]otwithstanding any inconsistent provision of law, where and to the extent that an agreement between the state and an employee organization entered into pursuant to article fourteen of this chapter so provides, the state cost of premium or subscription charges for eligible employees covered by such agreement may be

> modified pursuant to the terms of such agreement. The president [of the Civil Service Commission], with the approval of the director of the budget, may extend the modified state cost of premium or subscription charges for employees or retirees not subject to an agreement referenced above and shall promulgate the necessary rules or regulations to implement this provision.

(emphasis added). The amendment was deemed be in full force and effect on and after April 2, 2011. On November 3, 2011, the State announced that it would pay a reduced contribution rate to members of the Plaintiff Unions.

On February 27, 2012, the Plaintiffs filed the complaint in this action (Dkt. No 1.). The complaint asserts that the Court has federal question jurisdiction and supplemental jurisdiction over this action and that venue is premised on 28 U.S.C. § 1391(b)(1) and (b)(2). The complaint also claims venue is proper under U.S.C. §1391(b)(1) in the Eastern District of New York because Prudenti and DiNapoli reside in the Eastern District of New York and all the Defendants reside in New York. Alternatively, venue is based on U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim arose in the Eastern District.

The complaint asserts causes of action for impairment of contract; violations of due process; violation of civil rights pursuant to 42 U.S.C. § 1983; and breach of contract. The Plaintiffs also seek a judgment pursuant to Article 78 of the New York Civil Practice Laws and Rules ("CPLR"). The Plaintiffs contend that the Defendants violated Civil Service Law Section 209-a.1(d), (e), in that the Defendants failed to negotiate in good faith and ran afoul of the *Triborough* Doctrine. Finally, the Plaintiffs claim that Civil Service Law § 167(8) and its implementing regulations are unconstitutional as applied to them.

The Defendants now move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state

a claim upon which relief can be granted or, in the alternative, moved to transfer venue pursuant to 28 U.S.C. § 1404 to the United States District Court for the Northern District of New York.

**B. Related Actions**

At the time this action was commenced, nine actions in the Northern District of New York and one action in the Southern District of New York had already been commenced by various New York State public-employee unions. These actions challenged the constitutionality of Civil Service law § 167(8) on substantially similar grounds to those asserted here.

The actions originally filed in the Northern District are entitled New York State Law Correctional Officers & Police Benevolent Association v. State of New York, et al., 11-cv-1523; New York State Law Enforcement Officers Union Council 82 v. State of New York, et al., 11-cv-1524; Police Benevolent Association of New York State Troopers v. State of New York, et al., 11-cv-1526; New York State Police Investigators Association v. State of New York, et al., 11-cv-1527; Police Benevolent Association of New York State v. State of New York, et al., 11-cv-1528; Kuritz v. State of New York, et al., 11-cv-1529; Donahue v. State of New York, et al., 11-cv-1530, Kent v. State of New York, et al., 11-cv-1533; and Roberts v. State of New York, et al., 12-cv-46. Hite, Ahl, Hanrahan, Megna, and Dinapoli are all named defendants in these actions. Lippman is named a defendant in Donohue.

In and about February 2012, the defendants in the Northern District of New York actions filed similar motions to dismiss in each action. In nine substantially similar decisions, Judge D'Agostino of the Northern District of New York granted in part and denied in part the defendants' motion to dismiss the complaints. In particular, Judge Mae A. D'Agostino granted defendants' motion to dismiss plaintiffs' complaint for lack of subject matter jurisdiction as against various state entities and state officials in their official capacities as barred by the

8

Eleventh Amendment. Judge D'Agostino also granted the defendants' motion to dismiss plaintiffs' separate CPLR Article 78 claims. However, the court also held that the plaintiffs sufficiently articulated and pleaded impairment of contract and due process violations so as to survive a motion to dismiss.

The action originally filed in the Southern District of New York is entitled New York State Court Officers Association v. Hite, 12-cv-470. In that case, the plaintiffs moved for a preliminary injunction against the State defendants. After an evidentiary hearing, the court denied that motion. 2012 WL 899387, 2012 U.S. Dist. LEXIS 35245, 12 cv 470 (SAS) (March 15, 2012). The District Court held, among other determinations, that the terms of the CBAs unambiguously permitted UCS to reduce its rate of contribution to the Union's health insurance plan to correspond with the rate being paid by the State to other state employee unions, and that a state law prohibiting such a reduction neither barred the reduction nor constituted an implied term of the contract. The Second Circuit affirmed the denial of the preliminary injunction. See 475 F. Appx 803, 805 (2d Cir. 2012). In the interim, the action was transferred on consent to the Northern District of New York and consolidated with the nine actions in that district.

## II. DISCUSSION

Although the Defendants claim that venue is improper, "they have not filed a motion under Fed. R. Civ. P. 12(b)(3) or 28 U.S.C. § 1406(a) squarely raising such a claim. Rather, they proceed under 28 U.S.C. § 1404(a). The court need not reach the question of whether venue is proper, or whether defendants sufficiently raised a claim of improper venue, as the court finds sufficient cause to exercise its broad discretion to transfer venue pursuant to § 1404(a)." Donde v. Romano, No. 09-cv-4407, 2010 WL 3173321, at *1 fn. 1 (E.D.N.Y. 2010).

9

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); see generally Filmline (Cross—Country) Prods., Inc. v. United Artists, 865 F.2d 513, 520 (2d Cir. 1989). "[T]he purpose of the section is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616, 84 S. Ct. 805, 809, 11 L. Ed. 2d 945 (1964); Fuji Photo Film Co., Ltd. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 372 (S.D.N.Y. 2006).

"In any motion to change venue, the movant bears the burden of establishing the propriety of transfer by clear and convincing evidence." Payless Shoesource, Inc. v. Avalon Funding Corp., 666 F. Supp. 2d 356, 362 (E.D.N.Y. 2009) (Spatt, J.); accord Ford Motor Co. v. Ryan, 182 F.2d 329, 300 (2d. Cir. 1950) cert. denied, 340 U.S. 851, 71 S. Ct. 79, 95 L. Ed. 624 (1950); Neil Bros. Ltd. v. World Wide Lines, Inc., 425 F. Supp. 2d 325, 327 (E.D.N.Y. 2006) (Spatt, J.); Excelsior Designs, Inc. v. Sheres, 291 F. Supp. 2d 181, 185 (E.D.N.Y. 2003) (Spatt, J.); Citibank, N.A. v. Affinity Processing Corp., 248 F. Supp. 2d 172, 176 (E.D.N.Y. 2003); Hernandez v. Blackbird Holdings, Inc., No. 01 Civ. 4561, 2002 WL 265130, at *1 (S.D.N.Y. Feb. 25, 2002).

A motion to transfer venue requires a two-part inquiry: first, whether the action might have been brought in the transferee court; and second, whether transfer is appropriate considering the convenience of both the parties and the witnesses, and in the interest of justice. See Berman v. Informix Corp., 30 F. Supp. 2d 653, 656 (S.D.N.Y. 1998).

In this case, the Plaintiffs do not dispute that this action could have been brought in the Northern District of New York. Rather, the Plaintiffs contend that the Defendants fail to meet

their burden of proving that transfer would promote the interests of justice and the convenience of the parties.

In determining this second part of the inquiry, courts apply nine factors: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative means of the parties; (4) the locus of operative facts and relative ease of access to sources of proof; (5) the availability of process to compel the attendance of witnesses; (6) the weight accorded to the plaintiff's choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; and (9) trial efficiency and how best to serve the interests of justice, based on an assessment of the totality of material circumstances. N.Y. Marine and General Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 112 (2d Cir. 2010); Employers Ins. of Wausau v. Fox Entm't Group, Inc., 522 F.3d 271, 275 (2d Cir. 2008); D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106–07 (2d Cir. 2006); Payless Shoesource, 666 F. Supp. 2d at 362–63; Laumann Mfg. Corp. v. Castings USA, Inc., 913 F. Supp. 712, 720 (E.D.N.Y. 1996). "Ultimately, '[t]he Court has broad discretion in balancing these factors." Payless Shoesource, 666 F. Supp. 2d at 363 (quoting Neil Bros. Ltd. v. World Wide Lines, Inc., 425 F. Supp. 2d 325, 328 (E.D.N.Y. 2006) (Spatt, J.)); In re Cuyahoga Equip. Corp., 980 F.3d 110, 117 (2d Cir. 1992) ("Further, motions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis."). Below, the court will address the considerations relevant to this case, grouping factors together where appropriate.

A. **Convenience of the Parties and Witnesses**

In a Section 1404(a) motion, Courts have held that perhaps the most important consideration is the convenience of party and non-party witnesses in a Section 1404(a) motion.

See Invivo Research, Inc. v. Magnetic Resonance Equip. Corp., 119 F. Supp. 2d 433, 437 (S.D.N.Y. 2000) (citing Garrel v. NYLCare Health Plans, Inc. et al., No. 98 CV 9077, 1999 WL 459925, at *5 (S.D.N.Y. June 29, 1999)); see also Hubbell Inc. v. Pass & Seymour, Inc., 883 F. Supp. 955, 962 (S.D.N.Y. 1995).

Here, the Plaintiffs allege that many of their union members reside in the Eastern District. The Plaintiffs also allege that the principal offices of CALA, COBANC, and SC CEA are in the Eastern District. However, the Court notes that remainder of the Plaintiffs are statewide unions with no unique connection to the Eastern District of New York.

According to a declaration submitted by the Acting Counsel for the New York State Department of Civil Services in connection with the Hite case originally filed in the Southern District of New York, and incorporated into the Defendants' motion to transfer here, the various named executive agencies of New York State – including the primary offices of the Civil Service Commission and the Office of the Comptroller – and the Legislature are located in Albany, which is in the Northern District of New York.

The Defendants fail to identify who, if anybody, will be testifying at the trial. However, the Court finds that to the extent this action turns on constitutional questions and other pure issues of law, it is not likely to involve significant witness testimony and evidence. Therefore, the convenience of parties and witnesses weighs slightly in favor of transfer.

B. **Relative Means of the Parties**

"Where [an economic] disparity between the parties exists, such as an individual plaintiff suing a large corporation, the court may also consider the relative means of the parties in determining whether to transfer." Hernandez v. Graebel Van Lines, 761 F. Supp. 983, 989

(E.D.N.Y. 1991). Here, neither party makes an argument as to their relative means. Thus, the Court finds that this factor does not weigh in favor of either side.

### C. Access to Evidence and Location of Operative Facts

Courts look at the location of evidence in a §1404(a) motion when "documents are particularly bulky or difficult to transport, or proof that it is somehow a greater imposition for defendant to bring its evidence to New York than for plaintiff to bring its evidence to the moving party's proposed forum." Constitution Reinsurance Corp. v. Stonewall Ins. Co., 872 F. Supp. 1247, 1251 (S.D.N.Y. 1995). Here, for the same reason that this case will not likely involve significant witness testimony, it also will likely not involve physical evidence.

As to the location of operative facts, the formal consideration and passage of Civil Service Law §167(8) took place in Albany. However, much of the injury to the union members is alleged to have occurred in the Eastern District of New York. Accordingly, the Court finds this factor is neutral in the §1404(a) analysis.

### D. Plaintiff's Choice of Forum

Plaintiff's choice of forum is generally accorded great weight and should not be disturbed unless other factors weigh strongly in favor of transfer. See In re Nematron Corp. Secs. Litig., 30 F. Supp. 2d 397, 404 (S.D.N.Y. 1998); Berman v. Informix Corp., 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998). As explained below, the Court finds that the transferee forum's familiarity with the substantive law to be applied, trial efficiency, and the interests of justice weigh heavily in favor of transfer. Based on those factors, the Court concludes that the plaintiff's choice of forum is not entitled to considerable weight.

### E. The Forum's Familiarity with the Substantive Law to Be Applied

The forum's familiarity with substantive law is another factor for the Court to consider. "[W]here an action does not involve complex questions or another state's laws, courts in this district accord little weight to this factor on a motion to transfer." Merkur v. Wyndham Int'l, Inc., No. 00–CV–5843, 2001 WL 477268, at *1, *5, 2001 U.S. Dist. LEXIS 4642, at *1, *5 (E.D.N.Y. Mar. 30, 2001) (citing Vassallo v. Niedermeyer, 495 F. Supp. 757, 759 (S.D.N.Y. 1980)). Here, claims have been asserted under both federal and state law provisions. The Court finds that as a result of the actions now pending in the Northern District of New York, Judge D'Agostino has familiarity with the legal issues and facts pertinent to the instant action. Accordingly, this factor weighs in favor of transfer.

### F. Calendar Congestion, Trial Efficiency, and Interests of Justice

"[C]ourts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy," Williams v. City of New York, No. 03 Civ. 5342, 2006 WL 399456, at *3 (S.D.N.Y. Feb. 21, 2006); it can be "decisive," Delta Air Lines, Inc. v. Ass'n of Flight Attendants, CWA, 720 F. Supp. 2d 213, 219 (E.D.N.Y. 2010). "There is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." Id. (quoting Wyndham Assocs. v. Bintliff, 398 F.2d 614, 619 (2d Cir. 1968)). It is beyond dispute, then, that "the existence of a related action in the transferee district" weighs heavily in favor of transfer when considering judicial economy and the interests of justice. Id.; see also Jones, 2012 WL 716890, at *2; see also Ferens v. John Deere Co., 494 U.S. 516, 531, 110 S. Ct. 1274, 108 L. Ed. 2d 443 (1990) ("We have made quite clear that '[t]o

14

permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.'") (quoting Continental Grain Co. v. The FBL–585, 364 U.S. 19, 80 S. Ct. 1470, 4 L. Ed. 2d 1540 (1960)).

In this case, the parties make no arguments related to the calendar congestion of the respective District Courts. Nonetheless, judicial economy and the interests of justice weigh heavily in favor of transfer. There are presently ten substantially similar lawsuits pending before the Northern District of New York. In each action, plaintiffs claim that Civil Service Law § 167(8) is unconstitutional as applied and constitutes an impairment of contract. As noted above, Hite, Ahl, Hanrahan, Megna, and Dinapoli are named defendants in each of the actions. Indeed, the Hite action in the Southern District of New York has already been transferred to the Northern District of New York. Moreover, "this case is in its infancy stage and no discovery has yet been conducted." Citibank, N.A. v. Affinity Processing Corp., 248 F. Supp. 2d 172, 179 (E.D.N.Y 2003) (Spatt, J.) (transferring case where duplicate action was pending in District of South Carolina).

Based upon the totality of the circumstances, the Court finds that the Defendants have met their burden of demonstrating that transfer to the Northern District of New York would serve the interests of justice. As the Court finds that transfer is appropriate, it defers decision on the Defendants' motion to dismiss for failure to state a claim to allow the transferee court an opportunity to consider the merits of the case. See Lyon v. Cornell Univ., No. 97-CV-7070, 1998 WL 226193 at *2 (S.D.N.Y. May 4, 1998); Entenmann's Inc. v. King Bees Distrib. Co., Inc., 692 F. Supp. 157, 159 (E.D.N.Y. 1988).

## III.  CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the Defendants' motion to transfer venue in this case to the Northern District of New York is granted; and it is further

**ORDERED**, that the Clerk of the Court is directed to close this case.


SO ORDERED.
Dated: Central Islip, New York
June 1, 2013

_Arthur D. Spatt_         _<br>
ARTHUR D. SPATT<br>
United States District Judge